**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

_____

| | |
|---|---|
| MERRILL STEINBERG, Individually and On Behalf of All Others Similarly Situated, | ) )  **CIVIL ACTION NO. 07-CV-9615-RPP** ) |
| Plaintiff, | )  "ECF CASE" ) |
| vs. | ) ) |
| ERICSSON LM TELEPHONE CO., CARL-HENRIC SVANBERG and KARL-HENRIK SUNDSTROM, | ) ) ) ) |
| Defendants. | ) ) |

_____

| | |
|---|---|
| STATE-BOSTON RETIREMENT SYSTEM, Individually and On Behalf of All Others Similarly Situated, | ) )  **CIVIL ACTION NO. 07-CV-10659-RPP** ) )  "ECF CASE" |
| Plaintiff, | ) ) |
| vs. | ) ) |
| ERICSSON LM TELEPHONE CO., CARL-HENRIK SVANBER and KARL-HENRIK SUNDSTROM, | ) ) ) |
| Defendants. | ) ) |

_____

**DECLARATION OF BRIAN MURRAY IN SUPPORT OF MOTION OF**
**JACQUES FURHER TO CONSOLIDATE, TO BE APPOINTED LEAD PLAINTIFF,**
**AND FOR APPROVAL OF HIS SELECTION OF LEAD COUNSEL**

1

I, Brian Murray, declare as follows:

1.      I am a member of the law firm Murray, Frank & Sailer LLP, counsel for Jacques Furher.  I submit this Declaration in Support of Mr. Furher's Motion to Consolidate, to be Appointed Lead Plaintiff, and for Approval of his Selection of Lead Counsel.

2.      Attached hereto as Exhibit A is a true and correct copy of the notice published over the BUSINESS WIRE on October 29, 2007, providing notice of the filing of a class action complaint against the above-named defendants.

4.      Attached hereto as Exhibit B is a true and correct copy of the Plaintiff's Certification executed by Jacques Furher.

5.      Attached hereto as Exhibit C is a chart detailing the damages suffered by Mr. Furher.

7.      Attached hereto as Exhibit D is a true and correct copy of the firm résumé of Murray, Frank & Sailer LLP.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on December 27, 2007.

　　　　　/s/
　　　　　Brian Murray

2

# EXHIBIT A

BUS         Coughlin Stoia Geller Rudman & Robbins LLP Files Class Action
            Oct 29 2007  17:30


Suit Against Ericsson LM Telephone Co.



NEW YORK--(BUSINESS WIRE)--October 29, 2007
Coughlin Stoia Geller Rudman & Robbins LLP ("Coughlin Stoia")
(http://www.csgrr.com/cases/ericsson/) today announced that a class
action has been commenced in the United States District Court for the
Southern District of New York on behalf of a Class consisting of all
persons other than Defendants who purchased or otherwise acquired
publicly traded securities of Ericsson LM Telephone Co. ("Ericsson" or
the "Company") (NASDAQ:ERIC) between September 11, 2007 and October
15, 2007 (the "Class Period"), seeking to pursue remedies under the
Securities Exchange Act of 1934 (the "Exchange Act").

     If you wish to serve as lead plaintiff, you must move the Court no
later than 60 days from today. If you wish to discuss this action or
have any questions concerning this notice or your rights or interests,
please contact plaintiff's counsel, Samuel H. Rudman or David A.
Rosenfeld of Coughlin Stoia at 800/449-4900 or 619/231-1058, or via
e-mail at djr@csgrr.com. If you are a member of this class, you can
view a copy of the complaint as filed or join this class action online
at http://www.csgrr.com/cases/ericsson/. Any member of the purported
class may move the Court to serve as lead plaintiff through counsel of
their choice, or may choose to do nothing and remain an absent class
member.

     The complaint charges Ericsson and certain of its officers and
directors with violations of the Exchange Act. Ericsson is a
Sweden-based company that offers a portfolio of telecommunication and
data communication systems and services covering a range of
technologies.

     According to the complaint, during the Class Period, Defendants
issued materially false and misleading statements regarding the
Company's business and financial results. The complaint alleges that
Defendants knew or recklessly disregarded that: (i) the Company was
experiencing declining sales in its networks due to lower sales of
expansions and upgrades of mobile networks; (ii) sales in Western
Europe were declining due to operator consolidation in several
markets; and (iii) as a result, Defendants lacked a reasonable basis
for their positive statements about the Company's business.

     On October 16, 2007, before the market opened, Ericsson issued a
release entitled "Lower than expected result for Ericsson in third
quarter 2007". That same day, after these results were issued,

Copyright (c) 2007

BUS          Coughlin Stoia Geller Rudman & Robbins LLP Files Class Action
             Oct 29 2007  17:30


Ericsson's stock collapsed to close at $31.33 per share, a decline of
24%, on volume of 42.7 million shares.

   Plaintiff seeks to recover damages on behalf of a Class consisting
of all persons other than Defendants who purchased or otherwise
acquired publicly traded securities of Ericsson between September 11,
2007 and October 15, 2007, against Ericsson seeking to pursue remedies
under the Exchange Act. The plaintiff is represented by Coughlin
Stoia, which has expertise in prosecuting investor class actions and
extensive experience in actions involving financial fraud.

   Coughlin Stoia, a 190-lawyer firm with offices in San Diego, San
Francisco, Los Angeles, New York, Boca Raton, Washington, D.C.,
Houston and Philadelphia, is active in major litigations pending in
federal and state courts throughout the United States and has taken a
leading role in many important actions on behalf of defrauded
investors, consumers, and companies, as well as victims of human
rights violations. Coughlin Stoia lawyers have been responsible for
more than $45 billion in aggregate recoveries. The Coughlin Stoia Web
site (http://www.csgrr.com) has more information about the firm.


CONTACT:
Coughlin Stoia Geller Rudman & Robbins LLP
Samuel H. Rudman, 800-449-4900
David A. Rosenfeld
djr@csgrr.com

-0- Oct/29/2007 21:30 GMT

Copyright (c) 2007

# EXHIBIT B

att: Mr. Randall ...........

## PLAINTIFF CERTIFICATION

__JACQUES FURHER___ hereby states that:

1 _ Plaintiff has reviewed the complaint and has authorized the filing of the complaint on his behalf.

2, Plaintiff did not purchase any common stock/securities of ERICSSON at the direction of his counsel or in order to participate in this private action.

3 . Plaintiff is willing to serve as a representative party on, behalf of a class, including providing testimony at deposition and trial, if necessary, I understand that the litigation is not settled. This is not a claim form, and sharing in any recovery is not dependent upon execution of this Plaintiff Certification. I am willing to serve as a lead plaintiff either individually or as part of a group . A lead plaintiff is a representative party who acts on behalf of other class members in directing the action .

4. The following includes all of Plaintiffs transactions in ERICSSON securities during the class period specified in the complaint;

| SECURITY | TRANSACTION | TRADE DATE | PRICE PER QUANTITY |
|---|---|---|---|

### SEE ATTACHED SCHEDULE

5 . Plaintiff has not served or sought to serve as a representative party on behalf of a class under the federal securities laws during the last three years, unless otherwise stated in the space below:

6. Plaintiff will not accept any payment for serving as a representative party on behalf of a class except to receive his pro rata share of any recovery , or as ordered or approved by the court including the award to a representative party of reasonable costs and expenses including lost wages relating to the representation of the class.

Plaintiff declares under penalty of perjury that the foregoing is true and correct.

Executed this day of 12/13/2007 _____ *Jacques Furher* _____

JACQUES FURHER

**Jacques Furher's Transactions in Ericsson Securities**

**Transactions in Common Stock**

| Stock Exchange | Stock | Purchase/ Sale | Trade Date | Number of Shares | Price |
|---|---|---|---|---|---|
| LS | Stock | Purchase | 9/20/2007 | 7,100 | $42.50 |
| | Stock | Purchase | 9/20/2007 | 4,400 | $42.50 |
| | Stock | Purchase | 9/25/2007 | 1,000 | $42.50 |
| | Stock | Purchase | 9/26/2007 | 7,500 | $42.50 |
| | Stock | Purchase | 10/18/2007 | 5,600 | $42.50 |
| | Stock | Sale | 10/18/2007 | 5,600 | $29.895 |
| | Stock | Purchase | 10/18/2007 | 7,500 | $42.50 |
| | Stock | Purchase | 10/18/2007 | 2,500 | $42.50 |
| | Stock | Sale | 9/26/2007 | 20,000 | $35.00 |
| | Stock | Sale | 10/29/2007 | 7,500 | $29.82 |
| DLC | Stock | Purchase | 10/18/2007 | 4,500 | $42.50 |
| | Stock | Sale | 10/18/2007 | 4,500 | $29.67 |

**Transactions in Options**

| Stock Exchange | Option | Purchase/ Sale | Trade Date | Number of Shares (1 Option = 100 Shares) | Price |
|---|---|---|---|---|---|
| LS | Call Sep @37.5 | Sale | 8/10/2007 | 10,000 | $1.50 |
| | Call Sep @35 | Sale | 8/14/2007 | 10,000 | $2.50 |
| | Call Sep @35 | Sale | 8/28/2007 | 10,000 | $1.45 |
| | Call Sep @35 | Sale | 9/7/2007 | 10,000 | $1.55 |
| | Call Sep @35 | Purchase | 9/11/2007 | 10,000 | $3.10 |
| | Call Sep @37.5 | Purchase | 9/12/2007 | 10,000 | $2.05 |
| | Put Sep @42.5 | Sale | 9/13/2007 | 20,000 | $2.86 |
| | Put Oct @42.5 | Sale | 9/19/2007 | 10,000 | $2.25 |
| | Call Oct @37.5 | Sale | 9/20/2007 | 20,000 | $2.35 |
| | Call Oct @37.5 | Sale | 9/24/2007 | 10,000 | $1.85 |
| | Put Oct @42.5 | Sale | 9/28/2007 | 10,000 | $2.60 |
| | Call Oct @37.5 | Purchase | 10/5/2007 | 30,000 | $4.053 |
| | Put Oct @42.5 | Purchase | 10/5/2007 | 20,000 | $1.575 |
| | Put Oct @42.5 | Sale | 10/9/2007 | 10,000 | $2.35 |
| | Put Nov @42.5 | Sale | 10/11/2007 | 20,000 | $1.95 |
| | Put Oct @42.5 | Sale | 10/11/2007 | 10,000 | $1.80 |

| | | | | | |
|---|---|---|---|---:|---:|
| | Put Nov @42.5 | Sale | 10/12/2007 | 10,000 | $2.50 |
| | Put Oct @42.5 | Purchase | 10/16/2007 | 10,000 | $11.30 |
| | Put Nov @42.5 | Purchase | 10/16/2007 | 10,000 | $11.50 |
| | Put Oct @42.5 | Purchase | 10/16/2007 | 10,000 | $11.74 |
| | Put Nov @42.5 | Purchase | 10/17/2007 | 4,400 | $11.70 |
| DLC | Call Sep @35 | Sale | 8/28/2007 | 10,000 | $1.90 |
| | Put Sep @37.5 | Sale | 8/30/2007 | 10,000 | $1.25 |
| | Put Sep @37.5 | Sale | 8/31/2007 | 10,000 | $1.15 |
| | Put Sep @37.5 | Purchase | 9/12/2007 | 10,000 | $0.20 |
| | Put Sep @37.5 | Purchase | 9/12/2007 | 10,000 | $0.25 |
| | Put Sep @40 | Sale | 9/12/2007 | 10,000 | $1.00 |
| | Put Sep @40 | Sale | 9/13/2007 | 10,000 | $0.90 |
| | Put Sep @40 | Purchase | 9/17/2007 | 10,000 | $1.20 |
| | Call Sep @35 | Purchase | 9/19/2007 | 5,000 | $5.43 |
| | Call Sep @35 | Purchase | 9/19/2007 | 5,000 | $5.78 |
| | Call Sep @40 | Sale | 9/19/2007 | 5,000 | $0.60 |
| | Call Sep @40 | Sale | 9/19/2007 | 5,000 | $0.50 |
| | Put Oct @42.5 | Sale | 9/19/2007 | 10,000 | $2.20 |
| | Put Sep @40 | Purchase | 9/20/2007 | 10,000 | $0.70 |
| | Put Oct @42.5 | Purchase | 9/27/2007 | 5,000 | $3.30 |
| | Put Jan @42.5 | Sale | 9/27/2007 | 5,000 | $4.12 |
| | Put Oct @42.5 | Purchase | 9/28/2007 | 5,000 | $2.85 |
| | Put Jan @42.5 | Sale | 10/1/2007 | 5,000 | $3.90 |
| | Call Oct @40 | Sale | 10/3/2007 | 10,000 | $1.10 |
| | Call Oct @40 | Purchase | 10/15/2007 | 10,000 | $1.20 |
| | Put Jan @42.5 | Purchase | 10/15/2007 | 5,000 | $11.50 |
| | Put Jan @42.5 | Purchase | 10/18/2007 | 500 | $12.90 |

# EXHIBIT C

**Ericsson Telephone Co.**

**Furher's Total Loss = $1,080,869**

**Calls traded on DLC Stock Exchange during the Class Period**

| Trade Date | Purchase/Sale | Strike Price | Expiration | Number of Shares | Price | Profit/Loss | |
|---|---|---|---|---|---|---|---|
| 8/28/2007 | Sale to open | 35 | Sep | 10,000 | $1.90 | $19,000 | |
| 9/19/2007 | Purchase to close | 35 | Sep | 5,000 | $5.43 | ($27,150) | |
| 9/19/2007 | Purchase to close | 35 | Sep | 5,000 | $5.78 | ($28,900) | |
| | | | | | | **Subtotal** | ($37,050) |
| 9/19/2007 * | Sale to open | 40 | Sep | 5,000 | $0.60 | $3,000 | |
| 9/19/2007 * | Sale to open | 40 | Sep | 5,000 | $0.50 | $2,500 | |
| | | | | | | **Subtotal** | $5,500 |
| 10/3/2007 | Sale to open | 40 | Oct | 10,000 | $1.10 | $11,000 | |
| 10/15/2007 | Purchase to close | 40 | Oct | 10,000 | $1.20 | ($12,000) | |
| | | | | | | **Subtotal** | ($1,000) |

**Puts traded on DLC Stock Exchange during the Class Period**

| Trade Date | Purchase/Sale | Strike Price | Expiration | Number of Shares | Price | Profit/Loss | |
|---|---|---|---|---|---|---|---|
| 8/30/2007 | Sale to open | 37.5 | Sep | 10,000 | $1.25 | $12,500 | |
| 9/12/2007 | Purchase to close | 37.5 | Sep | 10,000 | $0.20 | ($2,000) | |
| | | | | | | **Subtotal** | $10,500 |
| 8/31/2007 | Sale to open | 37.5 | Sep | 10,000 | $1.15 | $11,500 | |
| 9/12/2007 | Purchase to close | 37.5 | Sep | 10,000 | $0.25 | ($2,500) | |
| | | | | | | **Subtotal** | $9,000 |
| 9/12/2007 | Sale to open | 40 | Sep | 10,000 | $1.00 | $10,000 | |
| 9/20/2007 | Purchase to close | 40 | Sep | 10,000 | $0.70 | ($7,000) | |
| | | | | | | **Subtotal** | $3,000 |
| 9/13/2007 | Sale to open | 40 | Sep | 10,000 | $0.90 | $9,000 | |

| 9/17/2007 | Purchase to close | 40 | Sep | 10,000 | $1.20 | ($12,000) | |
|---|---|---|---|---|---|---|---|
| | | | | | **Subtotal** | | ($3,000) |

| 9/19/2007 | Sale to open | 42.5 | Oct | 10,000 | $2.20 | $22,000 | |
|---|---|---|---|---|---|---|---|
| 9/27/2007 | Purchase to close | 42.5 | Oct | 5,000 | $3.30 | ($16,500) | |
| 9/28/2007 | Purchase to close | 42.5 | Oct | 5,000 | $2.85 | ($14,250) | |
| | | | | | **Subtotal** | | ($8,750) |

| 9/27/2007 | Sale to open | 42.5 | Jan | 5,000 | $4.12 | $20,600 | |
|---|---|---|---|---|---|---|---|
| 10/18/2007 | Purchase to close | 42.5 | Jan | 500 | $12.90 | ($6,450) | |
| 10/18/2007 ** | Forced sale | Intrinsic Value of Option Less Inflation ($42.50 - $27.01 = $15.49) X 4,500 shares ^ | | | | ($69,705) | |
| | | | | | **Subtotal** | | ($55,555) |

| 10/1/2007 | Sale to open | 42.5 | Jan | 5,000 | $3.90 | $19,500 | |
|---|---|---|---|---|---|---|---|
| 10/15/2007 | Purchase to close | 42.5 | Jan | 5,000 | $11.50 | ($57,000) | |
| | | | | | **Subtotal** | | ($37,500) |

**Calls traded on LS Stock Exchange during the Class Period**

| 8/10/2007 | Sale to open | 37.5 | Sep | 10,000 | $1.50 | $15,000 | |
|---|---|---|---|---|---|---|---|
| 9/12/2007 | Purchase to close | 37.5 | Sep | 10,000 | $2.05 | ($20,500) | |
| | | | | | **Subtotal** | | ($5,500) |

| 8/14/2007 | Sale to open | 35 | Sep | 10,000 | $2.50 | $25,000 | |
|---|---|---|---|---|---|---|---|
| 8/28/2007 | Sale to open | 35 | Sep | 10,000 | $1.45 | $14,500 | |
| 9/26/2007 ** | Forced sale | Intrinsic Value of Option Less Inflation ($35 - $27.01 = $7.99) X 20,000 shares † | | | | ($159,800) | |
| | | | | | **Subtotal** | | ($120,300) |

| 9/7/2007 | Sale to open | 35 | Sep | 10,000 | $1.55 | $15,500 | |
|---|---|---|---|---|---|---|---|
| 9/11/2007 | Purchase to close | 35 | Sep | 10,000 | $3.10 | ($31,000) | |
| | | | | | **Subtotal** | | ($15,500) |

| 9/20/2007 | Sale to open | 37.5 | Oct | 20,000 | $2.35 | $47,000 | |
|---|---|---|---|---|---|---|---|

| 9/24/2007 | Sale to open | 37.5 | Oct | 10,000 | $1.85 | $18,500 |
|---|---|---|---|---|---|---|
| 10/5/2007 | Purchase to close | 37.5 | Oct | 30,000 | $4.05 | ($121,590) |

**Subtotal**　　　($56,090)

**Puts traded on LS Stock Exchange during the Class Period**

| 9/13/2007 | Sale to open | 42.5 | Sep | 20,000 | $2.86 | $57,200 |
|---|---|---|---|---|---|---|
| 9/20/2007 ** | Forced purchase | Intrinsic Value of Option Less Inflation ($42.50 - $27.01 = $15.49) X 11,500 shares ‡ | | | | ($178,135) |
| 9/25/2007 ** | Forced purchase | Intrinsic Value of Option Less Inflation ($42.50 - $27.01 = $15.49) X 1,000 shares ▲ | | | | ($15,490) |
| 9/26/2007 ** | Forced purchase | Intrinsic Value of Option Less Inflation ($42.50 - $27.01 = $15.49) X 7,500 shares ♠ | | | | ($116,175) |

**Subtotal**　　　($252,600)

| 9/19/2007 | Sale to open | 42.5 | Oct | 10,000 | $2.25 | $22,500 |
|---|---|---|---|---|---|---|
| 9/28/2007 | Sale to open | 42.5 | Oct | 10,000 | $2.60 | $26,000 |
| 10/5/2007 | Purchase to close | 42.5 | Oct | 20,000 | $1.575 | ($31,500) |

**Subtotal**　　　$17,000

| 10/9/2007 | Sale to open | 42.5 | Oct | 10,000 | $2.35 | $23,500 |
|---|---|---|---|---|---|---|
| 10/16/2007 | Purchase to close | 42.5 | Oct | 10,000 | $11.74 | ($117,400) |

**Subtotal**　　　($93,900)

| 10/11/2007 | Sale to open | 42.5 | Oct | 10,000 | $1.80 | $18,000 |
|---|---|---|---|---|---|---|
| 10/16/2007 | Purchase to close | 42.5 | Oct | 10,000 | $11.30 | ($113,000) |

**Subtotal**　　　($95,000)

| 10/11/2007 | Sale to open | 42.5 | Nov | 20,000 | $1.95 | $39,000 |
|---|---|---|---|---|---|---|
| 10/17/2007 | Purchase to close | 42.5 | Nov | 4,400 | $11.70 | ($51,480) |
| 10/18/2007 ** | Forced purchase | Intrinsic Value of Option Less Inflation ($42.50 - $27.01 = $15.49) X 15,600 shares ♥ | | | | ($241,644) |

**Subtotal**　　　($254,124)

| 10/12/2007 | Sale to open | 42.5 | Nov | 10,000 | $2.50 | $25,000 |
|---|---|---|---|---|---|---|
| 10/16/2007 | Purchase to close | 42.5 | Nov | 10,000 | $11.50 | ($115,000) |

|                  |              |
|------------------|--------------|
| **Subtotal**     | ($90,000)    |
| **TOTAL LOSS**   | ($1,080,869) |

\* Option expired out of the money, no further calculation necessary.

\*\* To avoid double counting, we have not included the stock transactions which occurred as a result of the exercise of the options.

^ The exercise of this put option caused Furher to purchase 4,500 shares on 10/18/07 at $42.50.  On 10/18/07, Furher sold these 4,500 shares at $29.67.

† The exercise of this call option on 9/26/07 caused Furher to sell 20,000 shares at $35.00.  Furher originally purchased these shares at $42.50 on 9/20/07 (11,500 shares), 9/25/07 (1,000 shares), and 9/26/07 (7,500 shares) due to the exercise of the September $42.50 puts.

‡ The exercise of this put option caused Furher to purchase 11,500 shares on 9/20/07 at $42.50.  Furher later sold these shares on 9/26/07 when the September $35.00 calls were exercised.

▲ The exercise of this put option caused Furher to purchase 1,000 shares on 9/25/07 at $42.50.  Furher later sold these shares on 9/26/07 when the September $35.00 calls were exercised.

♠ The exercise of this put option caused Furher to purchase 7,500 shares on 9/26/07 at $42.50.  Furher later sold these shares on 9/26/07 when the September $35.00 calls were exercised.

♥ The exercise of this put option caused Furher to purchase 15,600 shares on 10/18/07at $42.50.  On 10/18/07, Furher sold 5,600 shares at $29.895 and 7,500 shares at $29.82.  Furher retained 2,500 shares at the end of the class period.

# EXHIBIT D

# Murray, Frank & Sailer LLP

275 Madison Avenue, Suite 801
New York, New York 10016
Telephone: (212) 682-1818
U.S. Toll Free: (800) 497-8076
Facsimile: (212) 682-1892
info@murrayfrank.com
www.murrayfrank.com

# M URRAY, FRANK & SAILER LLP concentrates its practice in class action litigation, particularly in cases involving federal securities law, federal antitrust law, ERISA, and state consumer protection law.

## SECURITIES FRAUD

Murray, Frank & Sailer has been lead, co-lead counsel, a member of the executive committee, or represented a class representative in successful securities actions throughout the United States, including the following:

*In re Royal Ahold Securities Litigation* (D. Md.) (recovery of $1.1 billion); *In re Williams Sec. Litig.* (N.D. Okla.) ($311 million); *In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.* (S.D.N.Y.) ($125 million); *In re JWP Inc. Sec. Litig.* (S.D.N.Y.) ($40 million); *In re Turkcell Iletisim Hizmetleri A.S. Sec. Litig.* (S.D.N.Y.) ($19.2 million); *In re PictureTel Inc. Sec. Litig.* (D. Mass.) ($14 million); *In re Marion Merrell Dow Inc. Sec. Litig.* (W.D. Mo.) ($14 million); *LaVallie v. Owens-Corning Fiberglas Corp.* (N.D. Ohio) ($10 million); *In re USX Sec. Litig.* (W.D. Pa.) ($9 million); *Miller v. Bonmati* (Del. Ch.) ($9.9 million); *Feiner v. SS&C Tech., Inc.* (D. Conn.) ($8.8 million); *In re ContiFinancial Sec. Litig.* (S.D.N.Y.) ($5.5 million); *In re EIS Int'l Inc. Sec. Litig.* (D. Conn.) ($3.8 million); *In re Quintiles Transnational Sec. Litig.* (M.D.N.C.) ($3 million); *In re Ramp Corp. Sec. Litig.* (S.D.N.Y.) ($2.075 million)

The firm is currently lead or co-lead counsel in many cases, including the following:

*In re General Motors Corp. Sec. Litig.* (E.D. Mich.); *In re Xybernaut Corp. Securities MDL Litigation* (E.D. Va.); *The 60223 Trust v. Goldman Sachs & Co.* (S.D.N.Y.); *In re Harley-Davidson, Inc. Sec. Litig.* (E.D. Wis.); *Amalgamated Bank v. The Coca-Cola Company* (N.D. Ga.); *In re Infineon Technologies AG Sec. Litig.* (N.D. Cal.); *Lowry v. Andrx Corp.* (S.D. Fla.); *In re Crompton Sec. Litig.* (D. Conn.); *In re Credit Suisse First Boston Corp. (Lantronix, Inc.) Analyst Sec. Litig.* (S.D.N.Y.); *Brody v. Zix Corp.* (N.D. Tex.).

Murray, Frank & Sailer also represented institutional plaintiffs in individual actions against AOL Time Warner and Royal Dutch Petroleum for violations of the United States securities laws.

## ANTITRUST

Murray, Frank & Sailer has also represented plaintiffs in federal and state class actions arising out of antitrust law violations, including the *Infant Formula, Brand Name Pharmaceutical, Nasdaq, VISA/Master-Card, Playmobil, Disposable Contact Lens,* and *Time Warner* cases.

Murray, Frank & Sailer is currently counsel in many cases involving Sherman Act violations including: *In re American Express Antitrust Litigation* (S.D.N.Y.); *In re Linens Antitrust Litig.* (S.D.N.Y.); *Schwartz v. The Thompson Corp.* (S.D.N.Y.); *In re Hydrogen Peroxide Antitrust Litig.* (E.D. Pa.); *In re Air Cargo Carrier Antitrust Litig.* (E.D.N.Y); *Slattery v. Apple Computer Inc.* (N.D. Cal.); *Payment Card Interchange Fee and Merchant Discount Antitrust Litig.* (E.D.N.Y.); *McDonough v. Toys "R" Us* (E.D. Pa.).

In the *Playmobil* case, Murray, Frank & Sailer was co-lead counsel, representing a class of purchasers of Playmobil products. Murray, Frank & Sailer was successful in obtaining certification of a plaintiff class in an oft-cited opinion and settling the case on favorable terms to the class. The Court, at the fairness hearing, "compliment[ed] both counsel in the fine job done negotiating with each other and also the legal work that has been submitted to the Court." In the *Disposable Contact Lens* case, Murray, Frank & Sailer represented a class of purchasers of disposable contact lenses in California, and eventually obtained reversal in the California appellate courts of a denial of class certification. In the *Time Warner* case, Murray, Frank & Sailer was co-lead counsel, representing a class of subscribers of Time Warner's high speed internet service. Murray, Frank & Sailer successfully overcame an arbitration clause and obtained favorable settlement for the class.

## CONSUMER PROTECTION

In the consumer protection area, Murray, Frank & Sailer as lead counsel has represented consumers in class actions involving, *inter alia,* misleading uniform public statements concerning wrongful billing practices and poor service by wireless communications providers; wrongful billing practices by credit card companies, banks and retailers; mislabeling of imported olive oil; mislabeling of domestic pasta; brokerage fees imposed with no or insufficient notice; Medicaid overcharges; and faulty automobile seat heaters.

Among its cases of note, Murray, Frank & Sailer recovered benefits worth $40 million in *Naevus Int'l v. AT&T Corp.*, a consumer class action brought in New York State Supreme Court on behalf of consumers who subscribed to AT&T's Digital One Rate wireless service. In 2005, the firm settled with Volkswagen of America, forcing a recall

2

of all 2003 and 2004 Volkswagen Jettas for faulty automobile seat heaters.

In *Sclafani v. Barilla America, Inc.*, a consumer class action brought in New York State Supreme Court on behalf of consumers who purchased Barilla brand pasta, MFS successfully argued that Barilla's packaging misled consumers into believing the company's pasta was made in Italy, obtaining a reversal of a trial court dismissal.

Similarly, in *Lomenzo v. Bertolli USA Inc.*, a consumer class action brought in New York State Supreme Court on behalf of consumers who purchased Bertolli brand olive oil, MFS successfully argued that Bertolli's labeling misled consumers into believing the company's olive oil was Italian.

## ERISA

Murray, Frank & Sailer is prosecuting several actions in federal court against employers on behalf of employees for employee investment fund mismanagement; knowingly offering, marketing, and selling improper investments to employees for their retirement accounts; and knowingly misrepresenting the prospects of the employees' company in order to sell company stock to them. The firm is currently co-lead counsel in the *Winn-Dixie Stores, Inc. ERISA Litig.*

(S.D. Fla.) and plaintiffs class counsel in *In re AON ERISA Litig.* (N.D. Ill.); *In re Cardinal Health, Inc. ERISA Litig.* (S.D. Ohio).

## FIRM HIGHLIGHTS

Murray, Frank & Sailer filed over 120 securities class actions in 2004 and over 100 cases in 2005. In Verteris's "Securities Class Action: Plaintiffs' Counsel Watch," Q2, 2005 Report, MFS was ranked fourth in "Plaintiffs' Counsel Litigation Activity Index" and "Plaintiffs' Counsel by Total Unique Actions," and fifth in "Plaintiffs' Counsel Based on Lead Plaintiff Appointments." In ISS's "Accountability Goes Global," May 2007 Report, MFS was ranked fifth in representing international lead plaintiff movants. MFS is also a member of the Executive Committee of the National Association of Shareholder and Consumer Attorneys (NASCAT).

## MAJOR ONGOING CASES

*Brody v. Zix Corp.* (N.D. Tex) – MFS is co-lead counsel representing a class of investors of Zix Corp. securities;

*Lowry v. Andrx Corp.* (S.D. Fla.) – MFS is lead counsel representing a class of investors of Andrx Corp. securities;

*In re Infineon Technologies A.G. Securities Litigation* (N.D. Cal.) –

3

MFS is co-lead counsel representing a class of investors of Infineon Technologies securities;

*In re Xybernaut Corp. Securities Litigation* (E.D. Va.) – MFS is co-lead counsel representing a class of investors of Xybernaut Corp. securities;

*Scapini v. Argentina* (S.D.N.Y.) – MFS is lead counsel representing a class of investors who purchased government bonds from Argentina;

*60223 Trust v. Goldman Sachs & Co.* – MFS is co-lead counsel representing a class of investors of Exodus Communications Inc. securities;

*In re General Motors Corp. Securities Litigation* (E.D. Mich.) – MFS is co-lead counsel representing a class of investors in General Motors securities;

*Amalgamated Bank v. The Coca-Cola Company* (N.D. Ga.) – MFS is co-lead counsel representing a class of investors of Coca-Cola securities;

*In re Harley-Davidson Securities Litigation* (E.D. Wis.) – MFS is co-lead counsel representing a class of investors in Harley-Davidson Company securities;

*In re Crompton Corp. Securities Litigation* (D. Conn.) – MFS is co-lead counsel representing a class of investors in Crompton Corp. securities.

## JUDICIAL COMMENDATIONS

*In re General Motors Corp. Sec. Litig.*, 05-CV-8088 (S.D.N.Y. 2006), in which the Court, before appointing the firm lead counsel, stated: "we know Mr. Frank very well, so they are both esteemed and experienced attorneys in these matters, and I don't think anybody could go wrong with either one of them to be honest with you."

*Miller v. Bonmati,* Del. Ch., C.A. No. 15849, Lamb, V.C. (March 18, 1999), in which the Court stated "I am quite pleased by the work that was done by the plaintiffs' counsel. They seem to have done a very professional job of dealing with a difficult situation and have obtained, from everything I can ascertain from the record in front of me, quite a beneficial settlement that gives an opportunity for this situation to work itself out."

*Adair v. Bristol Tech. Systems, Inc.*, 179 F.R.D. 126 (S.D.N.Y. 1998) in which Judge Robert Sweet stated plaintiffs' counsel were "skilled advocates and negotiators."

*In re EIS International, Inc. Sec. Litig.*, 97-cv-813 (D. Conn. 2006), in which the Court stated: "I wanted to compliment counsel . . . We have been together quite a long time in the case

4

and I appreciate all the fine legal work that you've done."

*Adair v. Microfield Graphics, Inc.* (D. Or. 1998), in a case that recovered 47% of estimated damages, the Court noted "Plaintiff's counsel have exhibited a high quality of work in prosecuting this action."

*Steffen v. Playmobil USA, Inc.*, Civ No. 95-2896 (E.D.N.Y.), in which the Court "compliment[ed] both counsel in the fine job done negotiating with each other and also the legal work that has been submitted to the Court."

*Kinney v. Metro Global Media, Inc.*, 170 F. Supp. 2d 173 (D.R.I. 2001), in which the court expressed an "appreciation for how difficult this case was for all sides, for how hotly contested many of the issues in this case were from the get-go and how reaching a settlement, given all of those considerations, was particularly difficult; so I commend all of you for persevering in the efforts that you made toward reaching a settlement . . . [and] for achieving what I find to be a fair, adequate and reasonable result[.]"

## PRECEDENT SETTING DECISIONS

In *Cambridge Biotech Corp. v. Deloitte and Touche LLP*, 6 Mass. L. Rptr. 367 (Mass. Super. Jan 28, 1997), on a case of first impression, the Superior Court of Massachusetts applied the doctrine of continuous representation for statute of limitations purposes to accountants for the first time in Massachusetts.

In *Kinney v. Metro Global Media, Inc.*, 170 F. Supp. 2d 173 (D.R.I. 2001), MFS successfully argued on a case of first impression in the District of Rhode Island for the pleading standard for claims against an auditor under the Private Securities Litigation Reform Act of 1995.

In *Feiner v. SS&C Tech., Inc.*, 11 F. Supp. 2d 204 (D. Conn. 1998), MFS prevailed on an issue of first impression concerning the liability of a qualified independent underwriter for an initial public offering.

In *Sclafani v. Barilla America, Inc.*, 2004-03542 (N.Y. App. Div.), MFS successfully argued before the Supreme Court's Appellate Division that General Business Law § 349(d) did not establish a complete defense to Plaintiff's allegation that Barilla's packaging misled consumers into believing the company's pasta was made in Italy, obtaining a reversal of a trial court dismissal.

In *Adair v. Bristol Tech. Sys., Inc.*, 179 F.R.D. 126 (S.D.N.Y. 1998), MFS prevailed on an issue of first impression in the Southern District of New York, successfully arguing that standing under the Securities Act of

1933 was not limited to buyers who purchased directly on an initial public offering. The opinion was subsequently cited in decisions and secondary sources over 70 times.

# THE PARTNERS

**BRIAN MURRAY**, a partner, was admitted to the bars of Connecticut in 1990, the State of New York and the United States District Courts for the Southern and Eastern Districts of New York in 1991, the Second Circuit in 1997, the First and Fifth Circuits in 2000, and the Ninth Circuit in 2002. He received B.A. and M.A. degrees from the University of Notre Dame in 1983 and 1986, respectively. He received a J.D. degree, *cum laude*, from St. John's University School of Law in 1990. At St. John's, he was the Articles Editor of the ST. JOHN'S LAW REVIEW. Mr. Murray co-wrote: *The Proportionate Trading Model: Real Science or Junk Science?*, 52 CLEVELAND ST. L. REV. 391 (2004-05); *The Accident of Efficiency: Foreign Exchanges, American Depository Receipts, and Space Arbitrage,* 51 BUFFALO L. REV. 383 (2003); *You Shouldn't Be Required To Plead More Than You Have To Prove*, 53 BAYLOR L. REV. 783 (2001); *He Lies, You Die: Criminal Trials, Truth, Perjury, and Fairness*, 27 NEW ENGLAND J. ON CIVIL AND CRIMINAL CONFINEMENT 1 (2001); *Subject Matter Jurisdiction Under the Federal Securities Laws: The State of Affairs After Itoba*, 20 MARYLAND J. OF INT'L L. AND TRADE 235 (1996); *Determining Excessive Trading in Option Accounts: A Synthetic Valuation Approach*, 23 U. DAYTON L. REV. 316 (1997); *Loss Causation Pleading Standard*, NEW YORK LAW JOURNAL (Feb. 25, 2005); *The PSLRA 'Automatic Stay' of Discovery*, NEW YORK LAW JOURNAL (March 3, 2003); and *Inherent Risk In Securities Cases In The Second Circuit*, NEW YORK LAW JOURNAL (Aug. 26, 2004). He also authored *Lifting the PSLRA "Automatic Stay" of Discovery*, 80 N. DAK. L. REV. 405 (2004); *Aftermarket Purchaser Standing Under § 11 of the Securities Act of 1933*, 73 ST. JOHN'S L. REV. 633 (1999); *Recent Rulings Allow Section 11 Suits By Aftermarket Securities Purchasers*, NEW YORK LAW JOURNAL (Sept. 24, 1998); and Comment, Weissmann v. Freeman: *The Second Circuit Errs in its Analysis of Derivative Copyrights by Joint Authors*, 63 ST. JOHN'S L. REV. 771 (1989).

Mr. Murray was on the trial team that prosecuted a securities fraud case under Section 10(b) of the Securities Exchange Act of 1934 against Microdyne Corporation in the Eastern District of Virginia and he was also on the trial team that presented a claim under Section 14 of the Securities Exchange Act of 1934 against Artek Systems Corporation and Dynatach Group which settled midway through the trial.

Mr. Murray's major cases include *In re Eagle Bldg. Tech. Sec. Litig.*, 221 F.R.D. 582 (S.D. Fla. 2004), 319 F. Supp. 2d 1318 (S.D. Fla. 2004) (complaint against auditor sustained due to magnitude and nature of fraud; no allegations

of a "tip-off" were necessary); *In re Turkcell Iletisim A.S. Sec. Litig.*, 209 F.R.D. 353 (S.D.N.Y. 2002) (defining standards by which investment advisors have standing to sue); *In re Turkcell Iletisim A.S. Sec. Litig.*, 202 F. Supp. 2d 8 (S.D.N.Y. 2001) (liability found for false statements in prospectus concerning churn rates); *Feiner v. SS&C Tech., Inc.*, 11 F. Supp. 2d 204 (D. Conn. 1998) (qualified independent underwriters held liable for pricing of offering); *Malone v. Microdyne Corp.*, 26 F.3d 471 (4th Cir. 1994) (reversal of directed verdict for defendants); and *Adair v. Bristol Tech. Systems, Inc.*, 179 F.R.D. 126 (S.D.N.Y. 1998) (aftermarket purchasers have standing under section 11 of the Securities Act of 1933).  Mr. Murray also prevailed on an issue of first impression in the Superior Court of Massachusetts, in *Cambridge Biotech Corp. v. Deloitte and Touche LLP*, in which the court applied the doctrine of continuous representation for statute of limitations purposes to accountants for the first time in Massachusetts.  6 Mass. L. Rptr. 367 (Mass. Super. Jan. 28, 1997).  In addition, in *Adair v. Microfield Graphics, Inc.* (D. Or.), Mr. Murray settled the case for 47% of estimated damages.

Mr. Murray served as a Trustee of the Incorporated Village of Garden City (2000-2002); Commissioner of Recreation for Garden City (2001-2002); Commissioner of Police for Garden City (2000-2001); Member, Sports Law Committee, Association of the Bar for the City of New York, 1994-1997; and is currently a Member, Litigation Committee, Association of the Bar for the City of New York, 2003-present; and Member, New York State Bar Association Committee on Federal Constitution and Legislation, 2005-present.

Mr. Murray has been a panelist at CLEs sponsored by the Federal Bar Council and the Institute for Law and Economic Policy, at the German-American Lawyers Association Annual Meeting in Frankfurt, Germany, and is a frequent lecturer before institutional investors in Europe on the topic of class actions.

**MARVIN L. FRANK**, the managing partner, was admitted to the bars of New York, New Jersey, and the United States District Court for the District of New Jersey in 1991, the District of Nebraska in 2005, the United States District Courts for the Southern and Eastern Districts of New York in 1992, the Second Circuit in 1998, the Seventh Circuit in 1999, the United States Supreme Court in 2004, the Eastern District of Michigan in 2006, and the Northern District of Texas in 2006.  Mr. Frank graduated with a B.A. degree from The City College of New York in 1969, a M.B.A. degree from Bernard M. Baruch College in 1974, and received his J.D. degree, *magna cum laude*, from New York Law

School in 1991. At New York Law School, he received the Kaplun Foundation Award For Academic Excellence.

Mr. Frank's major cases include *In re General Motors Corp. Sec. Litig.*, 05-CV-8088 (S.D.N.Y.), in which the Court, before appointing the firm lead counsel, stated "we know Mr. Frank very well, so they are both esteemed and experienced attorneys in these matters, and I don't think anybody could go wrong with either one of them to be honest with you"; *Sclafani v. Barilla America, Inc.*, 2004-03542 (N.Y. App. Div.), in which Mr. Frank successfully argued before the Supreme Court's Appellate Division that General Business Law § 349(d) did not establish a complete defense to Plaintiff's allegation that Barilla's packaging misled consumers into believing the company's pasta was made in Italy, obtaining a reversal of a trial court dismissal; *Miller v. Bonmati,* Del. Ch., C.A. No. 15849 (Lamb, V.C.) (Mar. 18, 1999), in which the Court stated "I am quite pleased by the work that was done by the plaintiffs' counsel. They seem to have done a very professional job of dealing with a difficult situation and have obtained, from everything I can ascertain from the record in front of me, quite a beneficial settlement that gives an opportunity for this situation to work itself out."; *In re JWP Inc. Sec. Litig.* (S.D.N.Y.) ($40 million); *In re Marion Merrell Dow Inc. Sec. Litig.* (W.D. Mo.) ($14 million); *In re PictureTel Inc. Sec. Litig.* (D. Mass) ($14 million); *In re ContiFinancial Sec. Litig.* (S.D.N.Y.) ($5.5 million); *In re Quintiles Transnational Sec. Litig.* (M.D.N.C.) ($3 million).

Mr. Frank is the firm's representative on the Executive Committee of the National Association of Shareholder and Consumer Attorneys (NASCAT). He is also Vice President of the Institute for Law and Economic Policy (ILEP), a public policy research and educational foundation – a think tank – established to preserve, study, and enhance access to the civil justice system by shareholders and consumers and is Vice President of the Emerald Green Property Owners Association in Rock Hill, New York.

Mr. Frank co-wrote *Staying Derivative Actions Pursuant to PSLRA and SLUSA*, New York Law Journal (Oct. 21, 2005) and the Securities Reform Act Litigation Reporter, Vol. 20, No. 3 (Dec. 2005). Mr. Frank has been a panelist at the American Banker's Association Operations Conference for Securities, Brokerage & Trust in Memphis, Tennessee; a panelist at the Magenta One Conference for Securities and Trust on the Isle of Jersey, United Kingdom; and a panelist at the Global Pensions' Conference on Shareholder Responsibility and Class Action Law in London.

JACQUELINE SAILER, a partner, was admitted to the bars of Delaware in 1990, the United States District Court for the District of Delaware in 1991, the State of New York and the United States District Courts for the Southern and Eastern Districts of New York in 1996, the United States Court of Appeals for the Sixth Circuit and the United States District Court for the District of Colorado in 1997, the United States Court of Appeals for the Second Circuit in 1998, and the United States Supreme Court in 2005.  She graduated with honors from Smith College with a B.A. degree in 1985.  She received a J.D. degree from St. John's University School of Law in 1990.  Ms. Sailer is fluent in French.  She is a member of the Federal Bar Council; member, National Association of Consumer Advocates; and member, Association of the Bar for the City of New York, including the Sex and Law Committee, 1996-1999.  Ms. Sailer is the co-author of *Loss Causation Pleading Standards*, NEW YORK LAW JOURNAL (Feb. 25, 2005).

Among the cases in which MS. Sailer has served as Lead or Co-Lead Counsel, Ms. Sailer was Co-Chair of the Executive Committee of Lead Counsel in *In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.* (S.D.N.Y.), in which $125 million was recovered on behalf of investors.  She was also responsible for the recovery of $40 million worth of benefits for a plaintiff class of wireless consumers in a consumer class action, *Naevus Int'l, Inc. v. AT&T Corp.*  Her major reported cases as lead counsel include *Naevus Intl., Inc. v. AT&T Corp.*, 713 N.Y.S.2d 642 (Sup. Ct. New York Co. 2000) (establishing limits on the reach of the Federal Communications Act on state consumer fraud claims), in which she successfully argued against a motion to dismiss on behalf of a class of current and former subscribers to AT&T's wireless service; and a federal securities class action: *Baffa v. Donaldson, Lufkin & Jenrette Securities Corp.*, 999 F. Supp. 725 (S.D.N.Y. 1998) (denying underwriters' motion to dismiss securities fraud claims); *Kinney v. Metro Global Media, Inc.*, 170 F. Supp. 2d 173 (D.R.I. 2001) (addressing the pleading standard for fraud under the Private Securities Litigation Reform Act of 1995 for claims against an auditor, an issue of first impression in the District of Rhode Island), in which she successfully argued and opposed an auditor's motion to dismiss claims under Section 10(b) of the Securities Exchange Act of 1934.  At the fairness hearing in *Metro Global*, the court expressed an "appreciation for how difficult this case was for all sides, for how hotly contested many of the issues in this case were from the get-go and how reaching a settlement, given all of those considerations, was particularly difficult; so I commend all of you for persevering in the efforts that you made toward reaching a settlement . . . [and] for achieving what I find to be a fair, adequate and reasonable result[.]"

Ms. Sailer's trial experience includes the prosecution of a breach of contract case that was tried successfully before a jury in the District of Delaware.

Currently Ms. Sailer's major case responsibilities include serving as lead counsel in *Lowry v. Andrx Corp.* (S.D. Fla.) (securities class action), *60223 Trust v. Goldman Sachs & Co.* (S.D.N.Y.) (securities class action), and *In re Xybernaut Corp. Securities Litigation* (E.D. Va.) (securities class action).

**LAWRENCE D. MCCABE**, a partner, was admitted to the bars of the State of New York and the United States District Court for the Southern District of New York in 1995, and the United States District Court for the Eastern District of New York in 2001. Mr. McCabe received a B.A. degree, *cum laude,* from Iona College in 1984. He received his J.D. degree, *cum laude*, from Fordham University School of Law in 1994. At Fordham, he was a Notes & Articles editor of the Law Review. Upon graduation from Fordham, he was admitted into the Order of the Coif.

Mr. McCabe focuses his practice primarily on class actions on behalf of defrauded investors, derivative actions on behalf of corporate shareholders, as well as complex commercial litigation. His extensive securities fraud litigation experience includes significant settlements for class members in *In re Computer Associates 2002 Class Action Sec. Litig.* (common stock valued at approximately $165 million); *Scheiner v. i2 Tech., Inc.* (N.D. Tex.) ($87.75 million); *In Re Lason, Inc. Sec. Litig.* (E.D. Mich.) ($12.68 million); *In re Berkshire Realty Co. Shareholder Litig.* (Del. Ch.) ($6.25 million); *Dorchester Investors v. Peak TrENDS Trust* (S.D.N.Y.) ($4 million).

Upon graduation from college, Mr. McCabe worked as a securities trader, specializing in NASDAQ securities. After law school, Mr. McCabe practiced commercial litigation with Skadden, Arps, Slate, Meagher & Flom LLP. Mr. McCabe has been an active member of the plaintiffs bar since 2002 when he became associated with Milberg Weiss Hynes & Lerach LLP and later with Lerach Coughlin Stoia Geller Rudman & Robbins LLP.

## THE ASSOCIATES

**GREGORY B. LINKH**, an associate, was admitted to the bars of the State of New York and the United States District Court for the Southern and Eastern Districts of New York in 2000. He graduated from the State University of New York at Binghamton with a B.A. degree in 1996 and received a J.D. degree from the University of Michigan in 1999. Mr. Linkh is the co-author of *Inherent Risk In Securities Cases In The Second Circuit*, NEW YORK LAW JOURNAL (Aug. 26, 2004); *Staying Derivative Action Pursuant to PSLRA and SLUSA*, NEW YORK LAW JOURNAL (Oct. 21, 2005) and the SECURITIES REFORM ACT LITIGATION REPORTER, Vol. 20, No. 3 (Dec. 2005). Prior to joining Murray, Frank & Sailer, Mr. Linkh was associated with the law firms Dewey Ballantine LLP and Pomerantz Haudek Block Grossman & Gross LLP.

**THOMAS J. KENNEDY**, an associate, was admitted to the bars of New York and the United States District Courts for the Southern and Eastern Districts of New York in 1996. He received a J.D. degree in 1995 from St. John's University School of Law and a B.S. in Accounting from Miami University in 1992. Mr. Kennedy passed the CPA exam in 1998.

**BRIDGET V. HAMILL**, an associate, was admitted to the bars of the State of New Jersey in 2001 and the State of New York in 2005. She received a J.D. degree in 2000 from Rutgers School of Law and a B.A. from Douglass College of Rutgers University, where she was one of twelve members of her graduating class in the Douglass Scholars Academic Scholarship Program, in 1985. Her primary area of practice is securities class action. Prior to joining Murray, Frank & Sailer, Ms. Hamill was law clerk to U.S. Magistrate Judge Mark Falk in the District of New Jersey. While attending law school, she was an employee stock options/stock purchase plan administrator in New York City. Prior to entering law school, Ms. Hamill was a health care information systems manager.

**BRIAN BROOKS**, an associate, was admitted to the bar of the State of Louisiana in 2003.  Mr. Brooks received a B.A. from Northwestern State University in 1998 and a J.D. from Washington and Lee University in 2002. Prior to joining Murray, Frank & Sailer he was associated with the firm of Percy, Smith & Foote, where his primary area of practice was antitrust law.

**OLGA FORT**, an associate, was admitted to the bar of the State of New York in 2005. She graduated from Fordham University School of Law with a Master of Laws degree in Banking, Corporate and Finance Law in 2004.  She received a J.D. degree in 1998 from the Moscow Institute of Economics and Law and a B.A. degree in Commerce and Marketing from Moscow University for the Humanities in 1995.  She attended the Russian State Institute of Intellectual Property from 1998 to 2000.   She authored "International Exhaustion of Intellectual Property Rights," PATENT AFFAIRS, #8, Moscow, 2000 and Exhaustion of Intellectual Property Rights, RUSSIAN STATE INSTITUTE OF INTELLECTUAL PROPERTY JOURNAL, Moscow, 1999 (Thesis for and Presentation at the Conference on Legal Protection, Commercial Use and Problems associated with Intellectual Property organized by the Russian State Agency on Patents and Trademarks, December 16-17, 1999).  While attending law school, Mrs. Fort clerked for a Judge in Moscow Military Court.  She worked as a legal counsel for the Savings Bank of the Russian Federation where she specialized in banking, finance, and corporate law. Prior to joining Murray, Frank & Sailer, Mrs. Fort was associated with the Law Offices of Peter E. Finning, where her primary area of practice was insurance defense litigation. She is a member of the American Bar Association and New York State Bar Association.

**SCOTT H. LEVY**, an associate, was admitted to the New York bar in 2006. He received a B.A. degree in History from the University of California at Berkeley in 2001 and a J.D. degree from the Fordham University School of Law in 2005.  At Fordham, he was a staff member of the FORDHAM URBAN LAW JOURNAL.

**EVA HROMADKOVA**, an associate, was admitted to the New York bar in 2005.  She received an LL.M. degree in Corporate Law from NYU in 2004 and a Master's degree from Comenius University, Slovakia in 2001.

## OF COUNSEL

**DONALD J. WALLACE** was admitted to the New York bar in 1992. He earned a B.S. from the New York Institute of Technology in 1987 and a J.D. from St. John's University School of Law in 1991. While at St. John's, he was a member of the Law Review and was awarded the American Jurisprudence Award for Contracts I. He co-authored *You Shouldn't Be Required To Plead More Than You Have To Prove*, 53 BAYLOR L. REV. 783 (2001); *Jehovah's Witnesses and the Refusal of Blood Transfusions: A Balance of Interests*, 33 CATHOLIC LAWYER 361 (1991). Prior to entering law school, Mr. Wallace was a licensed stockbroker in Garden City, New York.

**JAMES M. MARRIN, JR.** was admitted to the bars of the State of New York in 2001 and the United States District Courts for the Southern and Eastern Districts of New York in 2005. He attended New York Law School on an academic scholarship and graduated *cum laude* in 2000. He graduated from Georgetown University with a B.A. in government in 1993. Mr. Marrin served as an Assistant District Attorney for Kings County from 2000 to 2003. From 2003 to 2005, he was in private practice, specializing in trusts and estates, real estate, and criminal defense.

**ANGELA M. FINLAY** was admitted to the Washington State bar in 2000. She received a J.D. from New York Law School in 1999 and a B.A. from Loyola College in Maryland in 1991. She holds a Certificate in Advanced Accounting from the University of Washington Business School.

**CHARLES CLAY CARROLL** was admitted to the bars of the State of Alabama and the United States District Courts for the Northern, Middle, and Southern Districts of Alabama in 2003, and the bar of the State of Kentucky in 2005. He earned his J.D. degree in 2002 from the University of Alabama, where he received the Balch & Bingham/Harold A. Bowron Award for Academic Achievement in Labor and Employment Law. After graduating from the University of Alabama with B.A. degrees in Political Economics (1994) and Geography (1995), Mr. Carroll earned graduate degrees in International Business Management from Schiller University and Heidelberg University in Germany in 1996; Public Administration from the University of Alabama in 1998; and Mediation and Conflict Resolution from Erasmus University in The Netherlands in 1999.

**NEIL GANDHI** was admitted to the New Jersey State bar in 2005 and the New York State bar in 2006. He received a B.A. degree in Economics and History from New York University in 2001 and a J.D. degree from Fordham Law School in 2005. At Fordham, he was an associate editor of the Fordham Intellectual Property, Media, and Entertainment Law Journal. While in law school, Mr. Gandhi interned at the New York Stock Exchange.

**KEITH E. GITMAN** was admitted to the Florida Bar in 2007. He received a J.D. degree from Brooklyn Law School in 2003 and a B.A. degree in Policy Studies, with a concentration in Society and the Legal System, from the Maxwell School of Citizenship and Public Affairs at Syracuse University in 1999.

**CHLOE MURPHY** was admitted to the New York State Bar in 2006. She received a J.D. degree from New York Law School in 2004 and a B.A. degree in French from Columbia University in 1982. Ms. Murphy is fluent in French.