# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

_____

| | |
|---|---|
| MERRILL STEINBERG, Individually and On Behalf of All Others Similarly Situated, ) ) ) | **CIVIL ACTION NO. 07-CV-9615-RPP** |
| Plaintiff, ) ) | "ECF CASE" |
| vs. ) ) | |
| ERICSSON LM TELEPHONE CO., CARL-HENRIC SVANBERG and KARL-HENRIK SUNDSTROM, ) ) ) ) | |
| Defendants. ) ) ) | |

_____

| | |
|---|---|
| STATE-BOSTON RETIREMENT SYSTEM, Individually and On Behalf of All Others Similarly Situated, ) ) ) ) | **CIVIL ACTION NO. 07-CV-10659-RPP** |
| Plaintiff, ) ) | "ECF CASE" |
| vs. ) ) | |
| ERICSSON LM TELEPHONE CO., CARL-HENRIK SVANBER and KARL-HENRIK SUNDSTROM, ) ) ) ) | |
| Defendants. ) ) | |

_____

# JACQUES FURHER'S MEMORANDUM OF LAW IN REPLY TO THE INSTITUTIONAL INVESTOR GROUP'S MOTION TO BE APPOINTED LEAD PLAINTIFF

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

ARGUMENT ..................................................................................................................... 2

POINT I
MR. FURHER IS THE ONLY MOVANT WHO IS BOTH
ADEQUATE AND HAS LOSSES ................................................................................. 2

POINT II
THE INSTITUTIONAL INVESTORS ARE NOT A GROUP ............................................ 5

POINT III
THE INDIVIDUAL MEMBERS OF THE
INSTITUTIONAL INVESTOR GROUP ARE DISQUALIFIED ........................................ 6

POINT IV
MR. FURHER IS THE ONLY MOVANT WHO DOES NOT
SUFFER FROM UNIQUE DEFENSES .......................................................................... 8

CONCLUSION ................................................................................................................ 9

**INTRODUCTION**

Lead Plaintiff movant Jacques Furher respectfully submits this memorandum of law in reply to the opposition memorandum of the Institutional Investor Group.[1]  Mr. Furher requests that he be appointed lead plaintiff in this consolidated securities class action and requests that his counsel, Murray, Frank & Sailer LLP ("Murray Frank"), be appointed lead counsel.

Mr. Furher is a sophisticated investor who, as head of Drifton Finance Corporation, has previously been appointed lead plaintiff in *Nursing Home Pension Fund, et al v. Oracle Corp., et al*, Civ. No. 3:01-cv-00988-MJJ, an action pending in the Northern District of California, and he has suffered losses of $1,080,000 as a result of Defendants' fraud.  Mr. Furher is the ideal Lead Plaintiff for this action.

The Institutional Investor Group is disqualified from appointment as a lead plaintiff because:

- The Institutional Investor Group is comprised of wholly unrelated entities with no prior joint litigation experience or demonstrable cohesiveness, and should not be considered for appointment as lead plaintiff.  Indeed, the only prior relationship that these entities have is one of antagonism, not cooperation.

- Not only is the Institutional Investor Group unsuitable as a lead plaintiff group, but each of the individual members themselves are inadequate to be lead plaintiff because they individually chose to be a member of a group.

- The Institutional Investor Group has improperly manipulated the class period to maximize its losses demonstrating that it is lawyer created and lawyer driven.

---

[1] The Institutional Investor Group is comprised of (i) The City of Edinburgh Council on behalf of The Lothian Pension Fund ("Lothian"); (ii) Fortis Investment Management N.V./S.A. ("Fortis Investments"); (iii) Deka Investment GmbH ("Deka"); and (iv) State-Boston Retirement System ("Boston").

- Deka and Lothian, as foreign investors, are subject to unique defenses which preclude their acting as Lead Plaintiff.

- Deka is disqualified from acting as lead plaintiff by submitting a deficient and incomplete certification.

- Fortis is inadequate to be lead plaintiff because it is a net seller of Ericsson securities during the class period.

- Boston has no transactions in Ericsson securities during the class period, and accordingly has no standing to be lead plaintiff.

In light of these known deficiencies and inadequacies, the Institutional Investor Group attacks Mr. Furher falsely stating that his losses are insufficient and improperly calculated. Not only are Mr. Furher's losses substantial, the method of calculating those losses has long been accepted. Moreover, because the Institutional Investor Group and its individual members cannot act as Lead Plaintiffs, Mr. Furher is the only adequate lead plaintiff. Finally, despite the protests of the Institutional Investor Group, Mr. Furher's options transactions do not "raise unique defenses," as courts have long recognized the ability of options traders to act as Lead Plaintiffs.

## ARGUMENT

### POINT I

#### MR. FURHER IS THE ONLY MOVANT WHO IS BOTH ADEQUATE AND HAS LOSSES

The Institutional Investor Group argues that Mr. Furher's losses are not properly calculated because his calculation is not performed in "the way in which such calculations are usually done." Institutional Investor Group Opp. Mem. at 7. The Institutional Investor Group is wrong. First, the Private Securities Litigation Reform Act of 1995 ("PSLRA") provides no definitive method for calculating losses. *In re Cardinal Health, Inc. Sec. Litig.*, 226 F.R.D. 298,

302 (S.D. Ohio 2005); *In re Cigna Corp. Sec. Litig.*, 459 F. Supp. 2d 338, 350 (E.D. Pa. 2006) ("Rule 10b-5 and the PSLRA do not endorse any economic theory or methodology that should be used to quantify/demonstrate economic loss."). Second, Mr. Furher's loss analysis is not novel. The same formula was performed on behalf of Drifton Finance Corporation ("Drifton") in *Nursing Home Pension Fund, et al v. Oracle Corp., et al*, Civ. No. 3:01-cv-00988-MJJ, doc. no. 21, Exhibit A (attached hereto as Exhibit A). The Court appointed Drifton as co-lead plaintiff in that case, impliedly accepting Drifton's loss analysis. *Id.*, doc. no. 37, at 1, 5 (attached hereto as Exhibit B).

Mr. Furher's calculation is also a matter of common sense. Unlike common stock, where the transactions are fungible and matching a purchase transaction to a sale transaction is impossible except in the simplest of cases, purchases and sales of options contracts can be matched up based on the unique signifiers that mark the option market, such as strike price and expiration date of the contracts. For example, on August 28, 2007, Mr. Furher sold 100 call contracts (representing 10,000 common shares) on the DLC Stock Exchange with a strike price of $35, expiring in September (the "September $35 Calls"). Furher Opp., Exhibit C, at 1. On September 19, 2007, Mr. Furher purchased 100 call contracts on the same exchange with the same strike price and expiration date, thereby closing his position in September $35 Calls. *Id*. In this case, because these transactions are the only transactions in September $35 Calls, they must be matched up directly, and the traditional LIFO or FIFO analysis is unnecessary.

The true issue is how to value the losses from those option contracts that were exercised against Mr. Furher. The best method, a method accepted by the Court in *Oracle*, is to ignore the forced transactions (*i.e.* the forced purchase and sale) and to use the 90-Day Look Back price to

3

determine the actual difference in the premium paid or received and the true value of Mr. Furher's options.

For example, on September 19, 2007, Mr. Furher sold 50 put contracts (representing 5,000 common shares) on the DLC Stock Exchange with a strike price of $42.50, expiring in January (the "January $42.50 Puts") for a premium of $4.12 and total proceeds of $20,600. Furher Opp., Exhibit C, at 3.  On October 18, 2007, after the fraud was disclosed, Mr. Furher partially closed his open position by repurchasing 5 of the January $42.50 Puts for $12.90. *Id*. However, the remaining 45 January $42.50 Puts were exercised against him, forcing Mr. Furher to buy 4,500 common shares at $42.50.  *Id*.

The proper measure of damages for the remaining 45 January $42.50 Puts is not the losses from the forced transactions (as that would allow for double counting) but the additional premium that Mr. Furher would have received on the sale of these options on September 19, 2007, if the price of Ericsson common stock was not inflated as a result of Defendants' fraud. This additional premium is the difference between the strike price of the options and the un-inflated value of the stock, represented by the 90-day average.  *See* Furher Opp. Exhibit C, at 3. *See Deutschman v. Beneficial Corp.*, 132 F.R.D. 359, 371 (D. Del. 1990) ("[T]he market price of the underlying security may affect the premium at which the option holder is able to resell the option contract and the desirability of exercising the option by purchasing the shares at the striking price prior to the expiration date *vis-a-vis* allowing the option to expire.").  As explained in Exhibit C to the Furher Opp., based on the intrinsic value of the option set by the 90-Day Look Back  of $15.49, Mr. Furher's losses on his sale of the 50 January $42.50 Puts is $55,555.

# POINT II

## THE INSTITUTIONAL INVESTORS ARE NOT A GROUP

The Institutional Investor Group's primary argument is that it should be appointed lead plaintiff because it has the largest financial interest in the litigation. The Institutional Investor Group claims that Mr. Furher's losses of $1,080,000 are insufficient because the Institutional Investor Group's losses are "sixteen times" greater. Institutional Investor Group Opp. Mem at 2. But the Institutional Investor Group was created for the sole purpose of making this lead plaintiff motion. There is no business or other relationship among its four members, the four members may have spoken, but for the sole purpose of creating their "group," and there is unlikely to be further contact. This is not a "group" under the PSLRA.

Southern District of New York courts have refused to allow such "groups" to aggregate their losses. *See In re Pfizer Inc. Sec. Litig.*, 233 F.R.D. 334, 336 (S.D.N.Y. 2005) (Owen, J.) ("Several of the putative plaintiffs are aggregated into artificial "groups." Nothing before the Court indicates that this aggregation is anything other than an attempt to create the highest possible "financial interest" figure under the PSLRA. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb), and I reject it."); *see also In re Tarragon Corp. Sec. Litig.*, CA No. 07 CIV 7972(PKC), 2007 WL 4302732, at *2 (S.D.N.Y. Dec. 6, 2007) (Castel, J.) (denying motion by unrelated institutional investors); *In re Veeco Instruments, Inc. Sec. Litig.*, 233 F.R.D. 330, 334 (S.D.N.Y. 2005) (McMahon, J.) ("Courts (including this one) view [] aggregations of individual shareholders with disapproval."); *Barnet v. Elan Corp.*, PLC, Case Nos. 05 Civ. 2860 (RJH) and 05 Civ. 3166 (RJH), 2005 U.S. Dist. LEXIS 16388, *14-15 (S.D.N.Y. August 8, 2005) (Holwell, J.) (a group consisting of six unrelated entities was selected as lead plaintiff because its individual members had the largest financial interest: "This is simply not a case where a group of

5

unrelated investors has been cobbled together as a "group" to displace a single competing institutional investor, or a smaller, closely-related group of investors. If it were, the Court would be reluctant to recognize the group under the statute."); *In re eSpeed, Inc. Sec. Litig.*, Case No. 05 Civ. 2091 (SAS), 2005 U.S. Dist. LEXIS 14104, at *12-13 (S.D.N.Y. July 13, 2005) (Scheindlin, J.) (appointing a <u>family</u> group with greater losses than an institution as lead plaintiff, but refusing to aggregate a non-family member's losses with the family: "If the Adib family is dependent upon Weber's losses to establish aggregate losses greater than the Pension Fund's, then Weber will not be considered as part of the Adib Group, and the Pension Fund will be named presumptive lead plaintiff, assuming it can satisfy the requirements of Rule 23(a).").

Indeed, the only prior relationship that the members of the Institutional Investors Group have is one of antagonism, not cooperation. *See In re General Motors Sec. Litig.*, Civ. No. 1:50-cv-08088 (JES), doc. nos. 18-20; 22-24; 28-30; 31-34; 36-37; 59-65 (S.D.N.Y.) (demonstrating the adversarial relationship between Deka and Fortis in their battle to be lead plaintiff in the General Motors securities litigation).

## POINT III

### THE INDIVIDUAL MEMBERS OF THE INSTITUTIONAL INVESTOR GROUP ARE DISQUALIFIED

Beyond disqualifying the group as a lead plaintiff, courts have also disqualified the members of the group from individually acting as lead plaintiffs, even when a member has the greatest losses, because that member chose to act as a member of a group. *Bhojwani v. Pistiolis*, 06-cv-13761(CM)(KNF), 2007 WL 2197836, at *5, *6 (S.D.N.Y. July 31, 2007) (Fox, M.J.) ("possibility that lawyers formed these groups 'to manipulate the selection process, and thereby gain control of the litigation' is too great to be disregarded because such machinations are

6

precisely what PSLRA was enacted to restrict." And finding that individual who moved alone only adequate movant.).[2]

Moreover, as set forth in Mr. Furher's Opposition Memorandum, each if the individual members of the Institutional Investor Group suffers from unique defenses that preclude them from acting as lead plaintiffs. For example, Deka and Lothian, as foreign investors, are subject to unique defenses which preclude their acting as Lead Plaintiff. S*ee Borochoff v. GlaxoSmithKline PLC*, 246 F.R.D. 201, 205 (S.D.N.Y. 2007) (Stanton, J.) (holding that "possibility that foreign courts will not enforce a decision in favor of" defendant, raised significant concerns and "prudence cautions that the arguments for its exclusion are substantial, and in light of that risk it would be improvident to appoint the German Institutional Investor Group [including Deka] as lead plaintiff"); *In re Vivendi Universal S.A. Sec. Litig.*, 242 F.R.D. 76, 105 (S.D.N.Y. 2007) (Holwell, J.) (refusing to certify a similarly situated German investor under Rule 23, reasoning "plaintiffs have not shown a probability that German courts will give *res judicata* effect to a judgment in this case"); *In re Royal Ahold N.V. Sec. & ERISA Litig.*, 219 F.R.D. 343 (D. Md. 2003) (refusing to appoint German lead plaintiff in a case against a foreign corporation).

Deka also submitted a deficient and incomplete certification. *See* Furher Opp., at 11. Such a defective certification, standing alone, is grounds for finding a lead plaintiff movant inadequate. *See In re Eaton Vance Corp. Sec. Litig.*, 219 F.R.D. 38, 42 (D. Mass. 2003*); In re SafeGuard Scientifics*, 216 F.R.D. 577, 582 n.4 (E.D. Pa. 2003). Finally, Fortis is inadequate to be lead plaintiff because it is a net seller of Ericsson securities during the class period, *see* Furher

---

[2] The fact that the Institutional Investor Group improperly manipulated the class period to maximize its losses demonstrates that Magistrate Judge Fox's concerns that groups may lead to lawyer driven cases was well-founded. *See* Furher Op.. at 6-7; *Piven v. Sykes Enterprises, Inc.*, 137 F. Supp. 2d 1295, 1303 (M.D. Fla. 2000) (courts calculate losses using the class period defined in the first action filed).

Opp., at 14; *Capone v. MBIA, Inc.*, 50 Civ. 3514 (LLS), slip op. at 4 (S.D.N.Y. July 25, 2005) (Stanton, J), and Boston has no transactions in Ericsson securities during the initial class period. *See* Furher Opp. at 15; *In re AIG Advisor Group*, No. 06 CV 1625(JF), 2007 WL 1213395, at *4 (E.D.N.Y. April 25, 2007).

## POINT IV

### MR. FURHER IS THE ONLY MOVANT WHO DOES NOT SUFFER FROM UNIQUE DEFENSES

Rather than address their own deficiencies, the Institutional Investor Group raises a whole cloth allegation that Mr. Furher faces unique defenses because of his forced purchases and sales of Ericsson common stock. Institutional Investor Group Opp. at 8-9. However, as stated clearly above and in Exhibit C to Mr. Furher's Opposition Brief, Mr. Furher's forced transactions are not a part of his loss calculations and thus would raise no issue regarding individual issues of reliance that the Institutional Investor Group suggests. Despite Institutional Investor Group's empty assertion that Mr. Furher did not rely upon the market "[o]ption traders and other traders of securities aside from the shares of stock themselves may use the fraud-on-the-market presumption of reliance absent special circumstances compelling a different result." *In re Priceline.com Inc.* 236 F.R.D. 89, 99 (D. Conn. 2006) (appointing an option trader as class representative, overriding objections that there existed "unique defenses").[3]

_____

[3] The Institutional Investor Group's reliance on *Landry v. Price Waterhouse Chartered Accountants*, 123 F.R.D. 474, 476 (S.D.N.Y. 1989) (Edelstein, J.) is without merit in that that case was decided before enactment of the PSLRA and was based on admissions of the movant regarding reliance. There is no such evidence here.

## CONCLUSION

The Institutional Investor Group suffers from numerous deficiencies, including using an inappropriate class period manipulated to provide a favorable damages calculation, aggregating the damages of four entities in an impermissible group, filing a defective certification, and moving with parties with no standing or losses. The Institutional Investor Group's motion should be denied and Mr. Furher should be appointed Lead Plaintiff and his selection of Murray, Frank & Sailer LLP as Lead Counsel for the Class should be approved by the Court.

Dated:  January 30, 2008
      New York, New York

 

**MURRAY, FRANK & SAILER LLP**

By:         /s/
      Brian Murray (BM 9954)
Lawrence D. McCabe (LM 1846)
Brian Brooks (BB 7442)
275 Madison Avenue, 8th Floor
New York, New York 10016
Telephone: (212) 682-1818
Facsimile: (212) 682-1892

**Proposed Lead Counsel for the Class**

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on January 30, 2008, I caused to be electronically filed the foregoing JACUES FURHER'S MEMORANDUM OF LAW IN REPLY TO THE INSTITUTIONAL INVESTOR GROUP'S MOTION TO BE APPOINTED LEAD PLAINTIFF with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to counsel of record.

I FURTHER CERTIFY that I caused the foregoing document and the notice of electronic filing by first-class mail to the following non-CM/ECF participants:

N/A

**MURRAY, FRANK & SAILER LLP**

By: _____/s/_____
       Brian Murray (BM 9954)
Lawrence D. McCabe (LM 1846)
Brian Brooks
275 Madison Avenue, 8th Floor
New York, New York 10016
Telephone: (212) 682-1818
Facsimile: (212) 682-1892

**Proposed Lead Counsel for the Class**

1
2

## CERTIFICATION OF NAMED PLAINTIFF
## PURSUANT TO FEDERAL SECURITIES LAWS

3
4

DRIFTON FINANCE CORP. ("Plaintiff") declares:

5

1.    Plaintiff has reviewed a complaint and authorized its filing.

6

2.    Plaintiff did not acquire the security that is the subject of this action

7

at the direction of plaintiff's counsel or in order to participate in this private

8

action or any other litigation under the federal securities laws.

9

3.    Plaintiff is willing to serve as a representative party on behalf of the

10

class, including providing testimony at deposition and trial, if necessary.

11

4.    Plaintiff has made the following transaction(s) during the Class

12

Period in the securities that are the subject of this action:

13

| Security | Transaction | Date | Price Per Share |
|----------|-------------|------|-----------------|

14
15

*See* attached Schedule A.

16

5.    During the three years prior to the date of this Certificate, Plaintiff

17

has not sought to serve or served as a representative party for a class in an action

18

filed under the federal securities laws except as detailed below:

19
20
21
22

6.    The Plaintiff will not accept any payment for serving as a

23

representative party on behalf of the class beyond the Plaintiff's pro rata share

24

of any recovery, except such reasonable costs and expenses (including lost

25
26
27
28

1    6.    The Plaintiff will not accept any payment for serving as a

2 representative party on behalf of the class beyond the Plaintiff's pro rata share

3 of any recovery, except such reasonable costs and expenses (including lost

4 wages) directly relating to the representation of the class as ordered or approved

5 by the court.

6        I declare under penalty of perjury that the foregoing is true and correct.

7 Executed this 21st day of April , 2001.

8

9                               JACQUES FUHRER

10                              President

11                              of

12                              Dritton Finance Corp.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## SCHEDULE A

## SECURITIES TRANSACTIONS

**Stock Acquisitions**

| | Date Acquired | Amount Assigned | Assigned Price Per Share |
|---|---|---|---|
| | 02/16/2001 | 90,000 | $25.00 |

**Puts Written**

| Type of Put | Date Written | Written Contracts | Price Per Put Options |
|---|---|---|---|
| 2/17/01@25 | 01/23/2001 | 100 | $0.44 |
| 2/17/01@25 | 01/29/2001 | 100 | $0.44 |
| 2/17/01@25 | 02/06/2001 | 100 | $0.50 |
| 2/17/01@25 | 02/06/2001 | 100 | $0.38 |
| 2/17/01@25 | 02/07/2001 | 100 | $0.44 |
| 2/17/01@25 | 02/07/2001 | 100 | $0.44 |
| 2/17/01@25 | 02/07/2001 | 100 | $0.44 |
| 2/17/01@25 | 02/07/2001 | 100 | $0.44 |
| 2/17/01@25 | 02/07/2001 | 100 | $0.44 |
| 2/17/01@25 | 02/14/2001 | 100 | $1.00 |
| 2/17/01@25 | 02/14/2001 | 100 | $1.13 |
| 2/17/01@25 | 02/14/2001 | 100 | $1.25 |
| 3/17/01@22 1/2 | 01/26/2001 | 100 | $0.81 |
| 3/17/01@22 1/2 | 01/26/2001 | 100 | $0.88 |
| 3/17/01@25 | 01/29/2001 | 100 | $1.25 |
| 3/17/01@25 | 01/29/2001 | 70 | $1.31 |
| 3/17/01@25 | 01/29/2001 | 100 | $1.13 |
| 3/17/01@25 | 01/29/2001 | 100 | $1.38 |
| 3/17/01@25 | 01/29/2001 | 30 | $1.38 |
| 3/17/01@25 | 01/29/2001 | 100 | $1.38 |
| 3/17/01@25 | 01/30/2001 | 100 | $1.13 |
| 3/17/01@25 | 02/14/2001 | 100 | $2.69 |
| 3/17/01@25 | 02/14/2001 | 100 | $2.69 |
| 3/17/01@25 | 02/15/2001 | 100 | $2.00 |
| 3/17/01@25 | 02/21/2001 | 100 | $3.00 |
| 3/17/01@25 | 02/22/2001 | 50 | $3.00 |
| 3/17/01@25 | 02/22/2001 | 100 | $2.63 |
| 3/17/01@25 | 02/22/2001 | 50 | $3.00 |
| 3/17/01@25 | 02/22/2001 | 100 | $2.63 |
| 3/17/01@25 | 02/23/2001 | 50 | $4.13 |
| 3/17/01@25 | 02/26/2001 | 100 | $3.00 |
| 3/17/01@25 | 02/26/2001 | 100 | $3.13 |
| 3/17/01@25 | 02/26/2001 | 200 | $3.63 |
| 3/17/01@25 | 02/26/2001 | 100 | $3.50 |

**FILED**

**JUN 2 0 2001**

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOCAL 144 NURSING HOME PENSION FUND, On Behalf of Itself and All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>ORACLE CORPORATION, et al.,<br><br>Defendant.<br>_____/ | No. C 01-0988 MJJ<br><br>**ORDER GRANTING UCFW LOCAL 56 RETAIL MEAT PENSION FUND, ROBERT D. SAWYER, LOCAL 144 NURSING HOME PENSION FUND AND DRIFTON FINANCIAL CORPORATIONS' MOTION TO BE APPOINTED LEAD PLAINTIFF AND APPROVING CHOICE OF LEAD COUNSEL** |

**I. INTRODUCTION**

Before the Court is one remaining motion[1] regarding the appointment of lead plaintiff and approval of lead counsel in this securities fraud class action lawsuit brought against Oracle Corporation and Lawrence J. Ellison (collectively "Oracle"). The members of the purported class that seek to be appointed lead plaintiff and to have the Court approve their choice of lead counsel are UCFW Local 56 Retail Meat Pension Fund, Robert D. Sawyer, Local 144 Nursing Home Pension Fund, and Drifton Finance Corporation ("Movants"). For the reasons set forth below, the Court

---

[1]Additional motions were filed by C. James Cox, M & G Investment Management Ltd. and Sumner Rulon-Miller, Trustee for Acadia Scholarship Endowment Trust, and the Jose Group (Rene and Cynthia Jose, thomas Shaffer, Kung Hsu, Chuchen Weng, and Charles Combee), but have since been withdrawn. Furthermore, the Jose Group has withdrawn its opposition to the Movants motion to be appointed lead plaintiff and has indicated that Milberg Weiss, proposed counsel for Movants, has withdrawn as counsel in Pierce v. Ellison, C 01-20304 PVT (N.D. Cal., filed March 12, 2001 (a shareholder derivative action) and thus rendering moot the Jose Group's argument regarding a potential conflict of interest.

United States District Court

For the Northern District of California

1   grants the motion to appoint Movants as lead plaintiff and approves Movants' selection of counsel,

2   Milberg Weiss Bershad Hynes & Lerach, LLP ("Milberg Weiss").

## II. FACTUAL BACKGROUND

4       This matter involves nineteen related class actions brought pursuant to § 10(b) of the

5   Exchanged Act, 15 U.S.C. § 78j(b) and SEC Rule 10b-5, 17 C.F.R. § 240.10b-5, which have

6   been consolidated and await resolution by this Court.[2]  The purported class in each case consists of

7   institutions and individuals who purchased Oracle securities during the period from December 15,

8   2000 to March 1, 2000 (the "Class Period").  The complaints in these actions generally allege that

9   Oracle violated federal securities laws by disseminating false and misleading statements concerning

10  Oracle's third quarter 2001 revenues and projected earnings.  In particular, Plaintiffs claim that

11  Oracle made misleading statements about the demand for the company's database and applications

12  products and the market acceptance of its new 11i Suite of software products.  Plaintiffs further

13  allege that Oracle falsely projected that it would achieve very strong earnings per share ("EPS")

14  growth in the third quarter 2001 of $0.12, thus allegedly artificially inflating Oracle's stock to a

15  Class Period high of $35 per share.  While Oracle stock traded at allegedly artificially inflated levels,

16  Defendant Ellison and others sold nearly $1 billion worth of Oracle stock.

17

18      [2]The Court granted the motion to consolidate the following cases, with *Local 144 Nursing Home Pension Fund v.*
19  *Oracle Corp., et al.*, the low-numbered lawsuit against Oracle:

| | |
|---|---|
| *Local 144 Nursing Pension Fund v. Oracle Corp., et al* | C-01-0988 MJJ |
| *Belanski v. Oracle Corp., et al.* | C-01-1001 MJJ |
| *Yaish, et al v. Oracle Corp., et al.* | C-01-1237 MJJ |
| *Birnbaum v. Oracle Corp., et al.* | C-01-1011 MJJ |
| *Haenel v. Oracle Corp., et al.* | C-01-1036 MJJ |
| *Berdakina v. Oracle Corp., et al.* | C-01-1030 MJJ |
| *Lowinger v. Oracle Corp., et al.* | C-01-1040 MJJ |
| *Azerrad v. Oracle Corp., et al.* | C-01-1047 MJJ |
| *Walanka v. Oracle Corp.,et al.* | C-01-1048 MJJ |
| *Greenblatt v. Oracle Corp., et al.* | C-01-1097 MJJ |
| *Gollomp v. Oracle Corp., et al.* | C-01-1113 MJJ |
| *Goldfein v. Oracle Corp., et al.* | C-01-1160 MJJ |
| *Gordon v. Oracle Corp., et al.* | C-01-1174 MJJ |
| *Tuchman v. Oracle Corp., et al.* | C-01-01263 MJJ |
| *Rothsholder v. Oracle Corp., et al.* | C-01-1036 MJJ |
| *Monderer v. Oracle Corp., et al.* | C-01-1289 JL |
| *Farrell, et al. v. Oracle Corp., et al.* | C-01-1326 JCS |
| *Salvo v. Oracle Corp., et al.* | C-01-1416 EDL |
| *Hart, et al. v. Oracle Corp., et al.* | C-01-1436 EDL |

1   The proposed lead plaintiffs, Movants, who collectively suffered approximately eight million

2   dollars in losses due to their transactions in Oracle common stock and options, consist of UCFW

3   Local 56 Retail Meat Pension Fund, Robert D. Sawyer, Local 144 Nursing Home Pension Fund, and

4   Drifton Finance Corporation. Movants' stock purchases occurred during the Class Period.

5   **III. ANALYSIS**

6   **A.      Motion to Appoint Movants as Lead Plaintiff**

7   **1.      The Private Securities Litigation Reform Act ("PSLRA")**

8   Section 21D of the Exchange Act, 15 U.S.C. § 78u-4, as amended by the PSLRA, sets forth

9   the procedure for the selection of lead plaintiff to oversee class actions brought under the federal

10  securities laws. Section 21D(a)(3)(A)(i), 15 U.S.C. § 78u-4(3)(A)(i), provides that within twenty

11  days after the date on which a class action is filed under the PSLRA,

12  the plaintiff or plaintiffs shall cause to be published, in a widely circulated
    national business-oriented publication or wire service, a notice advising members
13  of the purported plaintiff class -

14  (1)    of the pendency of the action, the claims asserted therein, and the purported class
           period; and

15
16  (2)    that not later than 60 days after the date on which the notice is published, any
           member of the purported class may move the court to serve as lead plaintiff of the
           purported class.

17

18  On March 9, 2001, pursuant to § 21 D(a)(3)(A)(i), Movants published a notice of pendency of the

19  action on the *Business Wire.* (Britton Decl., Ex.C.)  That notice advised class members of the

20  existence of the lawsuit and described the claims asserted. Movants motion to be appointed lead

21  plaintiff was timely filed on May 8, 2001, within sixty days from the publication of that notice.

22  Pursuant to 15 U.S.C. § 78u-4, the court "shall appoint as lead plaintiff the member or

23  members of the purported plaintiff class that the court determines to be most capable of adequately

24  representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i).  The PSLRA creates a

25  rebuttable presumption that the most adequate plaintiff in any private action arising under this title is

26  the person or group of persons that (1) "filed the complaint or made a motion" to be appointed lead

27  plaintiff, (2) "has the largest financial interest in the relief sought by the class," and (3) "otherwise

28  satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-

**United States District Court**
For the Northern District of California

3

1    4(a)(3)(B)(iii)(I). This presumption may be rebutted "upon proof by a member of the purported

2    plaintiff class that the presumptively most adequate plaintiff . . . will not fairly and adequately

3    protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable

4    of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

5        **2.    Appointment of Lead Plaintiff**

6        In this case, Movants are the most adequate plaintiffs under the terms of the PSLRA's lead

7    plaintiff presumption. See 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). They have the largest financial interest

8    in the relief sought by the class by reason of the fact that they have suffered the greatest financial

9    loss, $8,187,517.14, of all the formerly proposed lead plaintiffs. Also, as discussed further below,

10   Movants satisfy the requirements of Rule 23 because their claims are similar to the claims of other

11   class members and because they have demonstrated that they are willing and able to obtain

12   appropriate class counsel and adequately prosecute this case. The appointment of Movants also

13   conforms with the Congressional concerns that motivated passage of the PSLRA. As an institutional

14   investor with a large financial stake in the outcome of this litigation, Movants significant losses

15   provide them with the incentive to actively represent the class in obtaining a recovery for Oracle's

16   alleged securities violations.

17       In order to establish itself as the "most adequate plaintiff" under the PSLRA, Movants must

18   show they can discharge the fiduciary duties that a class representative owes to absent class members

19   under Rule 23. See 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). Rule 23 provides that a party may serve

20   as a class representative if four prerequisites are satisfied:

21           (1) the class is so numerous that joinder of all members is impracticable, (2) there are
             questions of law or fact common to the class, (3) the claims or defenses of the
22           representative parties are typical of the claims or defenses of the class, and (4) the
             representative parties will fairly and adequately protect the interests of the class.
23

24   Fed. R. Civ. P. 23(a).

25       Movants assert that the questions of law and fact common to the members of the class that

26   predominate over questions that may affect individual class members include: (1) whether

27   Defendants' acts, as alleged, violated federal securities laws; (2) whether Defendants participated in

28   and pursued the common course of conduct complaint of; (3) whether documents, SEC filings, press

United States District Court

For the Northern District of California

4

1 | releases and other statements disseminated to the investing public and Oracle's stockholders during

2 | the Class Period misrepresented material facts about Oracle's financial condition and earnings; (4)

3 | whether the market price of Oracle's securities was artificially affected during the Class Period due

4 | to Defendants' misrepresentations and omissions; and (5) whether members of the class have

5 | sustained damages and, if so, what is the proper measure of damages.  The claims of each purported

6 | class member in this case arise from the same event or course of conduct giving rise to the claims of

7 | the other class members, therefore, Movants satisfy the typicality requirement of Rule 23.  See In re

8 | United Energy Corp. Solar Power Modules Tax Shelter Inv. Sec. Litig., 122 F.R.D. 251, 256 (C.D.

9 | Cal. 1988); accord Blackie v. Barrack, 524 F.2d 891, 902-03, n.19 (9th Cir. 1975).

10 |     Movants have also demonstrated they are adequate representatives pursuant to Rule 23(a)(4).

11 | This determination focuses on two inquiries: (1) whether the interests of the class representative

12 | coincide with those of the class, and (2) whether the representative has the ability to prosecute the

13 | action vigorously through the services of competent counsel.  See In re Computer Memories Sec.

14 | Litig., 111 F.R.D. 675, 682 (N.D. Cal. 1986).  First, adequacy requires the absence of antagonistic

15 | interests between class representatives and absent class members.  Here, since the issues surrounding

16 | the Defendants' alleged wrongdoing are virtually identical for each and every class member, the

17 | interests of Movants are suitably aligned with the interests of the class as a whole.  There is no

18 | evidence of antagonism between the Movants' interests and the interests of the proposed class.

19 |     Second, the Court considers Movants' willingness and ability to assume the duties of lead

20 | plaintiff, including the crucial duties of choosing adequate counsel at a negotiated fee and

21 | monitoring that counsel's conduct throughout the litigation.  Movants have demonstrated their

22 | adequacy by signing sworn certifications affirming their willingness to serve as, and assume the

23 | responsibilities of, class representatives. (See Britton Decl., Ex. A.)  Furthermore, Movants have

24 | selected a law firm that is experienced in prosecuting securities class actions to represent them.

25 | Accordingly, the Court finds that Movants satisfy the requirements of Rule 23, and all of the

26 | PSLRA's prerequisites for appointment as lead plaintiff in this action, and appoints Movants as lead

27 | plaintiff pursuant to 15 U.S.C. § 78u-4(a)(3)(B).

28 | ////

### 3.    Approval of Lead Plaintiff's Choice of Counsel

While the PSLRA gives the "most adequate plaintiff" the authority to "select and retain counsel to represent the class," that selection is "subject to the approval of the court." 15 U.S.C. § 78u-4(a)(3)(B)(v). Accordingly, some level of deference to the lead plaintiff's selection is envisioned by the PSLRA. However, the fiduciary duties owed to the class under Rule 23 by both the lead plaintiff and the court require the selection of the "best" counsel for the litigation.

Here, the Court has determined that Movants, the plaintiffs with the largest financial loss have adequately negotiated with counsel and have otherwise satisfied the adequacy requirements of Rule 23. Movants have selected Milberg Weiss as proposed lead counsel for the class. Milberg Weiss has extensive experience litigating securities class actions and has successfully prosecuted numerous securities fraud class actions on behalf of injured investors. (Britton Decl., Ex.A.) Here, the PSLRA presumption controls and the court "need not, and indeed should not, substitute its judgment for that of the lead plaintiff." Bowman v. Legato Systems, 195 F.R.D. 655, 659 (N.D. Cal. 2000). Accordingly, the Court approves Movants' choice of counsel.

### VI.  CONCLUSION

The Court grants Movants motion to be appointed lead plaintiff in this action and approves Movants choice of Milberg Weiss Bershad Hynes & Lerach LLP to serve as lead counsel.

**IT IS SO ORDERED.**

Dated: June 19, 2001

MARTIN J. JENKINS
UNITED STATES DISTRICT JUDGE

United States District Court
For the Northern District of California

6

ba

United States District Court
for the
Northern District of California
June 20, 2001


* * CERTIFICATE OF SERVICE * *



Case Number:3:01-cv-00988


Nursing Home Pension

    vs

Oracle Corporation

---

I, the undersigned, hereby certify that I am an employee in the Office of
the Clerk, U.S. District Court, Northern District of California.

That on  June 20, 2001, I SERVED a true and correct copy(ies) of
the attached, by placing said copy(ies) in a postage paid envelope
addressed to the person(s) hereinafter listed, by depositing said
envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office
delivery receptacle located in the Clerk's office.


    Reed R. Kathrein, Esq.
    Milberg Weiss Bershad Hynes & Lerach LLP
    100 Pine Street
    Ste 2600
    San Francisco, CA  94111

    William S. Lerach, Esq.
    Milberg Weiss Bershad Hynes & Lerach LLP
    600 W Broadway Ste 1800
    One America Plaza
    San Diego, CA  92101

    Mark Solomon, Esq.
    Milberg Weiss Bershad Hynes & Lerach LLP
    600 W Broadway Ste 1800
    One America Plaza
    San Diego, CA  92101

    Darren J. Robbins, Esq.
    Milberg Weiss Bershad Hynes & Lerach LLP
    600 W Broadway Ste 1800
    One America Plaza
    San Diego, CA  92101

    Denise M. Douglas, Esq.

Milberg Weiss Bershad Hynes & Lerach LLP
600 W Broadway St, 1800
One America Plaza
San Diego, CA  92101

Dorian Daley, Esq.
Oracle Corporation
500 Oracle Parkway
Redwood City, CA  94065

Lauren G. Segal, Esq.
Oracle Corporation
500 Oracle Parkway
Redwood City, CA  94065

Jamie E. Wrage, Esq.
Mayer Brown & Platt
350 So Grand Ave 25th Flr
Los Angeles, CA  90071

Steven O. Kramer, Esq.
Mayer Brown & Platt
350 So Grand Ave 25th Flr
Los Angeles, CA  90071

Javier H. Rubenstein, Esq.
Mayer Brown & Platt
190 So LaSalle St
Chicago, IL  60603

Alan N. Salpeter, Esq.
Mayer Brown & Platt
190 So LaSalle St
Chicago, IL  60603

Alfred G. Yates Jr., Esq.
Law Office of Alfred G. Yates Jr.
429 Forbes Ave
519 Allegheny Bldg
Pittsburgh, PA  15219

Michael Reese, Esq.
Milberg Weiss Bershad Hynes & Lerach LLP
100 Pine St
Ste 2600
San Francisco, CA  94111

Michael S. Egan, Esq.
Bernstein Liebhard & Lifshitz
10 East 40th St
New York, NY  10016

Jill M. Manning, Esq.
Kirby McInerney & Squire, LLP
7665 Redwood Blvd
Ste 200
Novato, CA  94948

Ira M. Press, Esq.
Kirby McInerney & Squire LLP

```
830 Third Ave
10th Flr
New York, NY  10022

Laurence D. King, Esq.
100 Pine Street
Suite 2600
San Francisco, CA  94111

Frederic S. Fox, Esq.
Kaplan Kilsheimer & Fox LLP
805 3rd Ave
New York, NY  10022

Jonathan Levine, Esq.
Kaplan Kilsheimer & Fox LLP
805 3rd Ave
New York, NY  10022

Joshua M. Lifshitz, Esq.
Bull & Lifshitz
246 West 38th Street
New York, NY  10018

Peter D. Bull, Esq.
Bull & Lifshitz
246 West 38th Street
New York, NY  10018

Mark S. Goldman, Esq.
Weinstein Kitchenoff Scarlato & Goldman, Ltd.
1608 Walnut St Ste 1400
Philadelphia, PA  19103

Marc A. Topaz, Esq.
Schiffrin & Barroway LLP
Three Bala Plaza East
Suite 400
Bala Cynwyd, PA  19004

Kevin J. Yourman, Esq.
Weiss & Yourman
10940 Wilshire Blvd
24th Flr
Los Angeles, CA  90024

Michael D. Braun, Esq.
Stull Stull & Brody
10940 Wilshire Blvd.
Ste 2300
Los Angeles, CA  90024

Timothy J. Burke, Esq.
Stull Stull & Brody
10940 Wilshire Blvd.
Ste 2300
Los Angeles, CA  90024

Barbara A. Podell, Esq.
Savett Frutkin Podell & Ryan PC
```

325 Chestnut St
Ste 700
Philadelphia, PA  19106

Francis M. Gregorek, Esq.
Wolf Haldenstein Adler Freeman & Herz LLP
Symphony Towers
750 B St
Ste 2770
San Diego, CA  92101

Betsy C. Manifold, Esq.
Wolf Haldenstein Adler Freeman & Herz LLP
Symphony Towers
750 B St
Ste 2770
San Diego, CA  92101

Francis A. Bottini Jr., Esq.
Wolf Haldenstein Adler Freeman & Herz LLP
Symphony Towers
750 B St
Ste 2770
San Diego, CA  92101

Fred T. Isquith, Esq.
Wolf Haldenstein Adler Freeman & Herz
270 Madison Ave
New York, NY  10016

Marc S. Henzel, Esq.
Law Offices of Marc S. Henzel
210 West Washington Square
Third Floor
Philadelphia, PA  19106-3503

Jay P. Saltzman, Esq.
Schoengold & Sporn, PC
19 Fulton St., Ste. 406
New York, NY  10038

Jules Brody, Esq.
Stull Stull & Brody
6 East 45th St 4th Flr
New York, NY  10017

Aaron C. Brody, Esq.
Stull Stull & Brody
6 East 45th St 4th Flr
New York, NY  10017

Tzivia Brody, Esq.
Stull Stull & Brody
6 East 45th St 4th Flr
New York, NY  10017

David Jaroslawicz, Esq.
Jaroslawicz & Jaros
150 Williams Street
New York, NY  10038

Richard W. Wieking, Clerk

BY: _____
        Deputy Clerk